WOLF POPPER LLP
Philip M. Black (SBN 308619)
pblack@wolfpopper.com
Chet B. Waldman (*pro hac vice* forthcoming)
cwaldman@wolfpopper.com
845 Third Avenue
New York, NY 10022
Telephone:  212.759.4600
*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH PLISZKA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>AXOS BANK d/b/a/ UFB DIRECT,<br><br>    Defendant. | Case No. **'24CV0445 LL    DDL**<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -

Plaintiff Joseph Pliszka ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his counsel, brings this Class Action Complaint ("Complaint") against Defendant Axos Bank d/b/a UFB Direct ("UFB"), and based upon personal knowledge with respect to himself, and on information and belief and the investigation of counsel as to all other matters, in support thereof alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action on behalf of himself and a class of all other persons who have had money market accounts with UFB since approximately March 1, 2022, with the exact class period to be established through discovery.

2.      This action concerns UFB's deceptive and unfair tactic of surreptitiously reclassifying its customers' purportedly high-yield money market accounts into lower yielding "legacy" accounts, and instead creating a series of new, but functionally identical accounts with competitive rates, with no notice to customers and while concealing its conduct by removing so-called "legacy" accounts from its website.

3.      UFB was established in 1999 as a division of Axos Bank ("Axos" or the "Bank") and offers online banking services, including high-yield money market accounts. Axos is a wholly-owned subsidiary of Axos Financial Inc. ("Axos Financial"), a publicly traded bank holding company.

4.      UFB has offered a money market account for depositors since at least May 2004. A money market account is an FDIC-insured deposit account. Since its inception, UFB has consistently advertised that its money market account pays a "high yield," or "exceptional" or "leading" interest rate, on account balances.[1] From

---

[1] For example, by navigating to the site for the "Secure Money Market" Account currently advertised by UFB, users are redirected to a page titled "High-Yield Money Market Account." *See* https://www.ufbdirect.com/savings/high-yield-money-market-account (last accessed March 1, 2024)

at least November 2020 until the time of filing this complaint, UFB has consistently emphasized its "Exceptional Interest Rates" and "Innovative Financial Solutions" on its website.[2]

5.    UFB knows that customers use interest bearing accounts, such as money market accounts, for extended periods to grow their balances over time. UFB encourages this behavior on its website by telling customers to "Put Your Savings on Autopilot."[3]

6.    However, as market interest rates rose dramatically beginning in early 2022, UFB began taking advantage of customers by furtively creating new, similarly named money market accounts with higher rates, while leaving existing customers in so-called "legacy" accounts with lower rates.

7.    Over the course of the class period, UFB executed this shell game tactic **at least ten times**. UFB deliberately selected ordinary, nondescriptive adjectives for each account rebrand, aiming to minimize the likelihood of detection by even the most vigilant account holders.

8.    The shell game began in April 2022 when the "Premium Money Market" was replaced with "UFB Money Market." The shell game continued with the substitution of "UFB Rewards Money Market" (August 2022), "UFB Elite Money Market" (September 2022), "UFB High Rate Money Market" (November 2022), "UFB Best Money Market" (December 2022), "UFB Preferred Money

---

[2] Compare UFB's website on November 28, 2020, advertising "Exceptional Interest Rates, Innovative Financial Solutions" (https://web.archive.org/web/20201128023355/https://www.ufbdirect.com/Savings last accessed March 1, 2024) with UFB's current website advertising "Exceptional Interest Rates, Innovative Financial Solutions" (https://www.ufbdirect.com/savings last accessed March 1, 2024).

[3] https://www.ufbdirect.com/insights/put-your-savings-on-autopilot (dated April 11, 2019; last accessed February 26, 2024).

Market" (March 2023), "UFB Premier Money Market" (April 2023), "UFB Priority Money Market" (August 2023), "UFB High Yield Money Market" (also August 2023), and finally "UFB Secure Money Market" (November 2023). All of these accounts were functionally identical, but each new iteration had a stepped-up interest rate. UFB provided no notice to legacy depositors that it was introducing new accounts with identical features that were paying higher interest rates.

9.     Each time UFB introduced a new, similarly named money market account offering, it synchronized the new advertised annual percentage yield ("APY") with the escalating federal funds rate. For instance, as the federal funds target rate rose from 0.00% in March 2022 to a range of 5.25% to 5.50% in November 2023, the APY linked to UFB's money market account products surged from 0.20% to 5.25%. However, UFB did not continue to raise the APY for the preceding "legacy" accounts in response to market conditions, and indeed would *lower* the APY as market rates continued to rise.

10.     When substituting a new money market account, without providing any notice to its existing money market account holders, UFB would concurrently revise its account disclosures to reclassify its previous money market accounts as "legacy" accounts. Although UFB ceased offering the "legacy" accounts to new depositors, it continued to maintain those accounts for preexisting money market account holders. However, UFB neglected to inform its account holders about the availability of a new money market account, nor did UFB inform account holders that its advertised money market account was not simply another name for their existing money market account, but instead was a distinct account offering a higher rate of interest. Consequently, existing money market customers were left in lower yield accounts.

11.     Based on UFB's conduct and representations, consumers held a reasonable expectation that the interest rates on their money market accounts would vary in accordance with prevailing market conditions, including the federal funds rate. In reliance on these representations, consumers who opened UFB money

market accounts reasonably held the expectation that they would receive and continue to receive the highest interest rate and APY provided by UFB—whatever that rate may be.

12.    The applicable UFB Personal Deposit Account Agreement and Schedule of Fees ("Account Agreement") states that "[t]he interest rate and corresponding APY for savings and money market accounts are variable and are set at [UFB's] discretion."[4] A covenant of good faith and fair dealing is implied in this agreement, and provides that UFB must exercise its discretion honestly and in good faith. UFB breached the covenant of good faith and fair dealing by failing to raise interest rates for its money market account holders, to whom UFB had promised a variable high-yield rate. Instead, UFB capped the interest rate for its money market accounts and created new, similar sounding money market account products with a higher yield, without informing its current customers. UFB has not increased the interest rate for legacy money market accountholders in response to market conditions, depriving these accountholders of interest payments on their purportedly high-yield account that they reasonably expected pursuant to the covenant of good faith and fair dealing implied in their contract with UFB.

13.    All of UFB's money market accounts are functionally identical. No rational person would choose to remain in a "legacy" account with a materially lower interest rate absent UFB's deceptive conduct.

---

[4] *See, e.g.*, "Personal Deposit Account Agreement and Schedule of Fees" at p.12. https://web.archive.org/web/20230401022519/https://www.ufbdirect.com/-/media/UFB-Direct/Documents/Disclosures/Personal-Deposit-Account-Agreement-and-Schedule-of-Fees--UFB (dated March 16, 2023; last accessed March 5, 2024); "Personal Deposit Account Agreement and Schedule of Fees" at p.13. https://web.archive.org/web/20230831143042/https://www.ufbdirect.com/-/media/UFB-Direct/Documents/Disclosures/Personal-Deposit-Account-Agreement-and-Schedule-of-Fees--UFB (dated August 11, 2023; last accessed March 5, 2024).

14. Plaintiff is one of the depositors adversely affected by UFB's unfair and deceptive conduct. In April 2023, Pliszka opened a UFB Preferred Money Market account jointly with his wife when the advertised APY was 5.02%.

15. Based upon UFB's advertisements and its representations that the interest rate was "variable," Pliszka invested funds into the UFB Preferred Money Market account, anticipating that his account would yield interest in alignment with the federal funds rate, as originally indicated. Instead, over the course of 2023, UFB capped the APY on Plaintiff's UFB Preferred Money Market account at 5.02% and then decreased it to 4.67% in September 2023. Simultaneously, UFB was actively advertising, and continues to do so, money market accounts with an APY of 5.25%.

16. UFB had a financial incentive to violate the covenant of good faith and fair dealing and to disseminate materially false and misleading statements and/or omissions regarding its high-yield money market accounts. UFB was able to report higher profits by underpaying money market account holders for the use of their cash in its lending business.

## PARTIES

17. Plaintiff Joseph Pliszka is a natural person who is a citizen of the United States and who is domiciled in the State of New York.

18. Defendant Axos Bank d/b/a UFB Direct is headquartered in San Diego, California. Defendant is a wholly-owned subsidiary of Axos Financial.

19. Defendant's website provides a mailing address of Axos Bank, 4350 La Jolla Village Drive, Suite 140, San Diego, CA 92122.[5]

20. In its Form 10-K for its fiscal year ended June 30, 2023 (the "2023 10-K"), at page 32, Axos Financial stated that Axos Bank "is based in San Diego, California, and approximately 41.3% of our real estate loan portfolio was secured

---

[5] https://www.axosbank.com/customer-support/business-support/contact-us (last accessed February 27, 2024).

by real estate located in California at June 30, 2023. In addition, some of our computer systems that operate our internet websites and their back-up systems are located in San Diego, California."[6]

21.    Additionally, in its Form 10-K for its fiscal year ended June 30, 2022 (the "2022 10-K"), at page F-9, Axos Financial reported that "[t]he Bank's business is primarily concentrated in the State of California and is subject to the general economic conditions of that state."[7]

22.    On a web page dated June 15, 2020, entitled "Start Enjoying the Benefits of Banking Locally and Digitally," Axos touts its connection to San Diego, California: "As an online bank based in San Diego, Axos Bank offers you the best of both worlds – a local financial institution that's also available anytime, anywhere. Born digital on July 4, 2000, Axos is more than just another online bank. We're a local resource that's committed to the people within the San Diego community. . . . There's no denying it – San Diego is one of the country's most expensive (albeit amazing) cities to live in. So why waste your hard-earned money on excessive bank fees? As a digital bank, we aren't weighed down by overhead costs. Instead, we pass those savings on to our customers. This means perks such as: Low to no fee checking, savings, and business accounts; Low to no minimum balance requirements; Industry-leading rates Use the money you save banking with Axos to explore San Diego's many attractions."[8]

---

[6] Axos Financial Form 10-K for the fiscal year ended June 30, 2023. https://d18rn0p25nwr6d.cloudfront.net/CIK-0001299709/25858605-facd-490d-bf74-218a094a71cd.pdf (last accessed February 27, 2024).

[7] Axos Financial Form 10-K for the fiscal year ended June 30, 2022. (https://s25.q4cdn.com/450655030/files/doc_financials/2022/ar/Axos-Financial-Inc.-2022-Annual-Report.pdf) (last accessed February 27, 2024).

[8] https://www.axosbank.com/blog/Start-Enjoying-the-Benefits-of-Banking-Locally-and-Digitally (dated June 15, 2020; last accessed February 26, 2024).

23.    From California, Axos markets its UFB online banking products to consumers nationwide. Specifically, in the 2023 10-K, at page F-9, Axos states: "The Company provides banking and securities products and services to its customers through its online and low-cost distribution channels and affinity partners. The Bank's deposit products are demand accounts, savings and money market accounts, and time deposits marketed to consumers and businesses located in all fifty states."[9]

24.    Furthermore, UFB states in its Account Agreement, that the Agreement and Financial Services are "accepted by the Bank in the State of California, and is governed by California and Federal law between you and the Bank." Moreover, the Agreement provides that an inactive account, presumed abandoned, with a foreign address on file will be surrendered to the State of California.

## JURISDICTION AND VENUE

25.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because this action is a class action in which there are 100 or more Class members; the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs; and at least one Plaintiff and member of the Class is a citizen of a state different from Defendant.

26.    This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District.

27.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this District.

28.    Upon information and belief, UFB has thousands of account holders nationwide, many of whom, like Plaintiff, are citizens of states other than California.

---

[9] 2023 10-K at F-9.

# FACTUAL ALLEGATIONS

## I.    UFB's High-Yield Money Market Accounts

29.    The UFB money market account is a distinct UFB deposit account product, advertised as offering "the security of a savings account with check-writing privileges." Opening this account currently requires no minimum balance. UFB's money market account imposes a $10.00 monthly maintenance fee, applicable only when the average daily balance falls below $5,000. UFB also offers savings accounts that do not offer check writing and do not impose a minimum balance fee.

30.    In the context of bank deposits, including money market accounts, interest is the amount of money that the bank pays the depositor for use of the depositor's funds, typically represented as a percentage of the total deposit amount. The annual percentage yield, or APY, is the percentage reflecting the total amount of interest paid on an account based on the interest rate and frequency of compounding a 365-day period.

31.    A "variable" rate money market account has an interest rate that is subject to change. UFB states on its website that its money market account is "a tiered variable rate account."[10]

32.    A tiered-rate account pays interest rates based on the amount of funds in the account. Beginning in at least December 2021 (excluding a brief period between April 2022 and August 2022 when UFB temporarily introduced a two-tier structure), UFB has advertised five separate tiers for money market accounts: $0 - $9,999.99, $10,000 - $24,999.99, $25,000 - $49,999.99, $50,000 - $99,999.99, and $100,000 or greater. Despite this, beginning in at least April 2022, UFB has consistently offered the same interest rate to all money market account holders, irrespective of their account tier.

---

[10] https://www.ufbdirect.com/ (last accessed February 26, 2024).

- 9 -

33.    Consumers use interest bearing accounts, including money market accounts, in order to save money and allow it to grow over time. Since April 11, 2019, UFB's website has told customers to "Put Your Savings on Autopilot."[11] According to UFB, "The simplest way to grow your savings is to set up an automatic transfer from your checking account to your savings account. This will ensure that a portion of your earnings will go toward your savings **without your having to think about it**." (Emphasis added). The page states that "[s]witching to a savings account with a high annual percentage yield (APY) can make your money work harder for you," which statement includes a hyperlink to the page advertising UFB's money market account.[12]

34.    In March 2022, UFB advertised that its money market account paid an APY of 0.20%. As of the date of this filing, UFB is advertising its money market account as offering an APY of 5.25%. UFB's advertised rates for its money market accounts over this period have consistently aligned with the federal funds rate.

35.    However, UFB fails to inform its customers, either on its website or through any other means, that its high-yield money market accounts are subject to being converted, without any prior notice, into non-high-yield "legacy" accounts with APYs that will only vary downward.

**II.    In 2022, UFB Begins Creating Duplicate Accounts with No Notice to Customers**

36.    As described herein, instead of adjusting rates for existing accountholders, UFB shelved their accounts, reclassifying them as "legacy" accounts, and instead introduced new accounts with similar names repeatedly over

---

[11] https://www.ufbdirect.com/insights/put-your-savings-on-autopilot (dated April 11, 2019; last accessed February 26, 2024).

[12] https://www.ufbdirect.com/savings (last accessed February 26, 2024).

the last two years, in an effort to deprive its customers of good faith variable interest rates, commensurate with the high yield rates it had advertised.

37.     From at least January 1, 2021, until approximately April 1, 2022, when market interest rates were extremely low, UFB offered an online money market account called "Premium Money Market." UFB advertised this account as offering "the security of a savings account with industry-leading rates." The rate paid on this account was 0.20% on all balances of $25,000 or greater and 0.10% on balances below $25,000. Additionally, UFB advertised that the interest rate and the corresponding APY were variable. Throughout the majority of this period, the federal funds target rate remained low, at 0.00%-0.25%, from January 1, 2021 through March 16, 2022.

38.     The federal funds rate began rising in early 2022, first increasing to a range of 0.25%-0.50% on March 17, 2022. By December 15, 2022, the federal funds target rate had risen to a range of 4.25%-4.50% and this upward trend persisted. As of February 26, 2024, the target rate stands at 5.25%-5.50% and the published effective federal funds rate stands at 5.33%.[13]

39.     In tandem with the surge in interest rates, beginning in or about April 2022, UFB aggressively promoted its high-yield money market account as a means for customers to "maximize their savings potential." But UFB did not offer higher rates by increasing rates for legacy customers. Instead, UFB created new accounts with similar sounding names, left existing customers in lower yield accounts, and took the lower yield accounts off its website in the hopes that customers wouldn't notice.

---

[13] *See* the Effective Federal Funds Rate published by the Federal Reserve Bank of New York at https://www.newyorkfed.org/markets/reference-rates/effr (last accessed March 1, 2024).

40.    For instance, in April 2022, UFB removed its Premium Money Market product from its website and substituted it with "UFB Money Market," paying 0.81% APY regardless of account balance, a notable increase from the 0.10% paid on the legacy Premium Money Market account on account balances under $25,000 and 0.20% paid on account balances over $25,000. Over the subsequent three months, UFB progressively raised the advertised APY for UFB Money Market, reaching up to 1.81%. Existing "Premium" account holders were left unaware and uninformed that they were not receiving the benefit of the advertised rate increase.

41.    UFB continued imposing interest rate caps and new product churn over the next two years, each time introducing a product with a deceptively similar name and a higher interest rate. For example, the original Premium Money Market was shelved for the higher rate "UFB Money Market" product in April 2022, which was then shelved for the "UFB Rewards Money Market" introduced in August, 2022. The introduction of the new money market account, with a slightly altered name and featuring a higher interest rate and APY, occurred without informing existing account holders who were unaware that their accounts would no longer benefit from the highest available interest rates at UFB.

42.    UFB neither informed account holders about the reclassification of their accounts as "legacy" accounts nor included any mention of these accounts on its website. "Legacy" account holders were not explicitly notified that they are not receiving the rate advertised online. Moreover, all the accounts appear nearly identical, with only one modification throughout the class period: in August 2023, the then-advertised money market account required no minimum balance to open the account. Previously, a minimum account balance of $5,000 was mandatory for opening a money market account. However, this subtle alteration was immaterial to account holders, as they were consistently obliged to maintain a minimum balance of $5,000 to avoid monthly maintenance fees.

43.    While the Account Agreement lists the Legacy Accounts, it fails to mention the APY paid on those accounts, compounding the misleading impression that UFB's current advertised APY is the only APY paid on any of the accounts. This lack of transparency leaves consumers unaware of UFB's fraudulent intent to modify account terms, and thereby change the fundamental nature of its money market account product, without any prior notice or disclosure.

44.    As outlined below, UFB capped and would even subsequently decrease the APY on its money market accounts each time it substituted a new account with a similar name, while advertising higher rates to new account holders and obscuring the difference between current offerings and "legacy" accounts.

### a.  Premium Money Market Account

45.    From on or about December 19, 2021 through at least April 1, 2022, UFB offered a money market account it called "Premium Money Market."[14]

46.    The promotion claim highlighted that "Premium Money Market Accounts earn 0.20% APY on all balances of $25,000 or greater."

---

[14] Accessed on February 27, 2024, via Wayback Machine at https://web.archive.org/web/20210127055805/https://www.ufbdirect.com/savings/premium-money-market.

- 13 -

## UFB Premium Money Market

Earn 0.20% APY* on all balances of $25,000 or greater. The UFB Premium Money Market offers the security of a savings account with industry-leading rates and check-writing privileges.

Open an Account    Compare Accounts

### Premium Money Market

Premium Money Market

| BALANCE TIERS | APY* | Rate |
|---|---|---|
| $0-$9,999.99 | 0.10% | 0.10% |
| $10,000-$24,999.99 | 0.10% | 0.10% |
| $25,000-$49,999.99 | 0.20% | 0.20% |
| $50,000-$99,999.99 | 0.20% | 0.20% |
| >$100,000 | 0.20% | 0.20% |

47.     Additionally, a lower rate of 0.10% APY was advertised on balances below $25,000.

48.     UFB's site clarified that the advertised rate for Premium Money Market was variable: "The interest rate and corresponding APY for savings is variable and is set at our discretion. This is a tiered variable rate account." *Id.*

**b.     UFB Money Market**

49.     From on or about April 27, 2022 through at least August 9, 2022, UFB offered a money market account it called "UFB Money Market."[15]

50.     Initially, the advertised APY was 0.81%. Over the next three months, UFB increased the advertised APY to 1.81%.[16]

_____

[15] Accessed on February 27, 2024, via Wayback    Machine    at https://web.archive.org/web/20220427195305/https://www.ufbdirect.com/Savings/Money-Market.

[16] Accessed   on     February 27, 2024 via    Wayback Machine at https://web.archive.org/web/20220721002953/https://www.ufbdirect.com/Savings/Money-Market.

51.    UFB advertised the Money Market Account product as follows: "The UFB Money Market offers the security of a savings account with check-writing privileges."

52.    UFB's site clarified in a footnote that the rate was variable: "The interest rate and corresponding APY for savings is variable and is set at our discretion. This is a tiered variable rate account."

UFB Money Market

Earn **up to 1.81% APY**[*]

The UFB Money Market offers the security of a savings account with check-writing privileges.

Open an Account        Compare Accounts  ›

## UFB Money Market

| Balance Tiers | APY[*] | Rate |
|---|---|---|
| $0-$24,999.99 | 1.81% | 1.79% |
| $25,000 or greater | 1.81% | 1.79% |

### c.  UFB Rewards Money Market

53.    From on or about August 12, 2022 through at least September 25, 2022, UFB offered a money market account it called "UFB Rewards Money Market."[17]

---

[17] Accessed on February 27, 2024, via Wayback Machine at https://web.archive.org/web/20220824143545/https://www.ufbdirect.com/.

54.    The advertised APY was initially 2.21%. On or about September 16, 2022, UFB increased the advertised APY to 2.61%.[18]

55.    UFB's site clarified in a footnote that the rate was variable: "The interest rate and corresponding APY for savings is variable and is set at our discretion. This is a tiered variable rate account."



**UFB Rewards Money Market**

| Balance Tiers | APY* | Rate |
|---|---|---|
| $0 - $9,999.99 | 2.61% | 2.58% |
| $10,000 - $24,999.99 | 2.61% | 2.58% |
| $25,000 - $49,9999.99 | 2.61% | 2.58% |
| $50,000 - $99,999.99 | 2.61% | 2.58% |
| $100,000 or greater | 2.61% | 2.58% |

**d.  UFB Elite Money Market**

---

[18] Accessed on February 27, 2024, via Wayback      Machine      at https://web.archive.org/web/20220924134139/https://www.ufbdirect.com/Savings/UFB-Rewards-Money-Market.

56.    From on or about September 28, 2022 through at least October 31, 2022, UFB offered a money market account it called "UFB Elite Money Market."[19]

57.    The advertised APY was 2.85%. On or about October 13, 2022, UFB increased the advertised APY to 3.11%.[20]

58.    UFB's site clarified in a footnote that the rate was variable: "The interest rate and corresponding APY for savings is variable and is set at our discretion. This is a tiered variable rate account."



**UFB Elite Money Market**

| Balance Tiers | APY* | Rate |
|---|---|---|
| $0 - $9,999.99 | 3.11% | 3.06% |
| $10,000 - $24,999.99 | 3.11% | 3.06% |
| $25,000 - $49,999.99 | 3.11% | 3.06% |
| $50,000 - $99,999.99 | 3.11% | 3.06% |
| $100,000 or greater | 3.11% | 3.06% |

**e.  UFB High Rate Money Market**

---

[19] Accessed on February 27, 2024, via Wayback Machine at https://web.archive.org/web/20220927201030/https://www.ufbdirect.com/Savings/ufb-elite-money-market/.

[20] Accessed on February 27, 2024, via Wayback Machine at https://web.archive.org/web/20221013034141/https://www.ufbdirect.com/Savings/ufb-elite-money-market/.

59.     From on or about November 16, 2022 through at least December 7, 2022, UFB offered a money market account it called "UFB High Rate Money Market."[21]

60.     The advertised APY was 3.83%. On or about December 2, 2022, UFB increased the advertised APY to 3.91%.[22]

61.     UFB's site clarified in a footnote that the rate was variable: "The interest rate and corresponding APY for savings is variable and is set at our discretion. This is a tiered variable rate account."

---

[21] Accessed on February 27, 2024, via Wayback Machine at https://web.archive.org/web/20221116204222/https://www.ufbdirect.com/Savings/ufb-high-rate-money-market.

[22] Accessed on February 27, 2024, via Wayback Machine at https://web.archive.org/web/20221202165738/https://www.ufbdirect.com/Savings/ufb-high-rate-money-market.



### f. UFB Best Money Market

62.    From on or about December 16, 2022 through at least February 2, 2023, UFB offered a money market account it called "UFB Best Money Market."[23]

63.    The advertised APY was 4.11%. On or about January 31, 2023, UFB increased the advertised APY to 4.21%.[24]

---

[23] Accessed on February 27, 2024, via Wayback    Machine    at https://web.archive.org/web/20221216183806/https://www.ufbdirect.com/.

[24] Accessed on February 27, 2024, via Wayback    Machine    at https://web.archive.org/web/20230131223730/https://www.ufbdirect.com/Savings/ufb-best-money-market.

64.    UFB's site clarified in a footnote that the rate was variable: "The interest rate and corresponding APY for savings is variable and is set at our discretion. This is a tiered variable rate account."



### g. UFB Preferred Money Market

65.    From on or about March 7, 2023 through at least April 13, 2023, UFB offered a money market account it called "UFB Preferred Money Market."[25]

---

[25] Accessed on February 27, 2024, via Wayback Machine at https://web.archive.org/web/20230307120024/https://www.ufbdirect.com/.

66.    The advertised APY was 4.55%. On or about March 15, 2023, UFB increased the advertised APY to 5.02%.[26]

67.    UFB's site clarified in a footnote that the rate was variable: "The interest rate and corresponding APY for savings is variable and is set at our discretion. This is a tiered variable rate account."



**UFB Preferred Money Market**

| Balance Tiers | APY* | Rate |
|---|---|---|
| $0 - $9,999.99 | 5.02% | 4.90% |
| $10,000 - $24,999.99 | 5.02% | 4.90% |
| $25,000 - $49,999.99 | 5.02% | 4.90% |
| $50,000 - $99,999.99 | 5.02% | 4.90% |
| $100,000 or greater | 5.02% | 4.90% |

---

[26] Accessed on February 27, 2024, via Wayback Machine at https://web.archive.org/web/20230315005352/https://www.ufbdirect.com/Savings/ufb-preferred-money-market.

### h. UFB Premier Money Market

68.    From on or about April 17, 2023 through at least July 1, 2023, UFB offered a money market account it called "UFB Premier Money Market" with an advertised APY of 4.81%.[27]

69.    UFB's site clarified in a footnote that the rate was variable: "The interest rate and corresponding APY for savings is variable and is set at our discretion. This is a tiered variable rate account."

UFB Premier Money Market

Say Hello to

# 4.81% APY*

The UFB Premier Money Market offers the security of a savings account with check-writing privileges.

Open an Account          Compare Accounts  >

### UFB Premier Money Market

| Balance Tiers | APY* | Rate |
|---|---|---|
| $0 - $9,999.99 | 4.81% | 4.70% |
| $10,000 - $24,999.99 | 4.81% | 4.70% |
| $25,000 - $49,999.99 | 4.81% | 4.70% |
| $50,000 - $99,999.99 | 4.81% | 4.70% |
| $100,000 or greater | 4.81% | 4.70% |

[27] Accessed on February 27, 2024, via Wayback Machine at https://web.archive.org/web/20230509112747/https://www.ufbdirect.com/Savings/ufb-premier-money-market.

- 22 -

### i.   UFB Priority Money Market

70.    From on or about August 4, 2023 through at least August 11, 2023, UFB offered a money market account it called "UFB Priority Money Market" with an advertised APY of 5.06%.[28]

71.    Based upon available information, UFB maintained consistent disclosures and an identical variable rate provision to the previously advertised "UFB Premier Money Market."

### j.   UFB High Yield Money Market

72.    From on or about August 12, 2023 through at least November 16, 2023, UFB offered a money market account it called "UFB High Yield Money Market" with an advertised APY of 5.25%.[29]

73.    Based upon available information, UFB maintained consistent disclosures and an identical variable rate provision to the previously advertised "UFB Priority Money Market."



---

[28] Accessed on February 27, 2024, via Wayback Machine at https://web.archive.org/web/20230804003248/https://www.ufbdirect.com/.

[29] Accessed on February 27, 2024, via Wayback Machine at https://web.archive.org/web/20230906161126/https://www.ufbdirect.com/Savings/ufb-high-yield-money-market.

| UFB High Yield Money Market | | |
| --- | --- | --- |
| Balance Tiers | APY* | Rate |
| $0 - $9,999.99 | 5.25% | 5.12% |
| $10,000 - $24,999.99 | 5.25% | 5.12% |
| $25,000 - $49,999.99 | 5.25% | 5.12% |
| $50,000 - $99,999.99 | 5.25% | 5.12% |
| $100,000 or greater | 5.25% | 5.12% |

### k.  UFB Secure Money Market

74.    From on or about November 21, 2023 through to the filing of this complaint, UFB has offered a money market account called "UFB Secure Money Market" with an advertised APY of 5.25%.[30]

75.    UFB promotes the account, stating: "With the security of a savings account and the convenience of check-writing privileges, our Secure Money Market account offers a leading interest rate without limiting your spending flexibility."[31]

76.    UFB's site also clarifies that the rate is variable: "The interest rate and corresponding APY for savings is variable and is set at our discretion. This is a tiered variable rate account."

---

[30] Accessed on February 27, 2024, via Wayback Machine at https://web.archive.org/web/20231121133711/https://www.ufbdirect.com/.

[31] Accessed on February 27, 2024, at https://www.ufbdirect.com/savings/high-yield-money-market-account/.

**UFB Secure Money Market**

## Reach New Heights With 5.25% APY*

With the security of a savings account and the convenience of check-writing privileges, our Secure Money Market account offers a leading interest rate without limiting your spending flexibility.

| Open an Account | Compare Accounts > |

### UFB Secure Money Market

| Balance Tiers | APY* | Rate |
|---|---|---|
| $0 to $9,999.99 | 5.25% | 5.12% |
| $10,000 to $24,999.99 | 5.25% | 5.12% |
| $25,000 to $49,999.99 | 5.25% | 5.12% |
| $25,000 to $49,999.99 | 5.25% | 5.12% |
| $50,000 to $99,999.99 | 5.25% | 5.12% |
| $100,000 or greater | 5.25% | 5.12% |

## III.   UFB's Deceptive Conduct Lured Customers to Open and Maintain Accounts

77.     The impact of UFB's shell game was noticeable. While Axos saw an increase of approximately 8,000 interest-bearing checking and savings accounts between June 30, 2021, and June 30, 2022, this figure surged tenfold in the subsequent year, adding nearly 83,000 new interest-bearing accounts by June 30, 2023. Axos Financial openly acknowledged the substantial surge in interest-bearing checking and savings accounts, attributing this remarkable growth to "increased marketing efforts" aimed at attracting increased consumer deposit accounts.[32]

---

[32] *See* Axos Financial Inc. Annual Report for the fiscal year ended June 30, 2023 ("Axos Form 10-K") (Aug. 29, 2023) at p. 11,

78.     Furthermore, the Axos Form 10-K revealed a notable increase in reported deposits. The reported deposits across interest-bearing accounts, which stood at approximately $1 billion between June 30, 2021, and June 30, 2022, experienced substantial growth, reaching over $5 billion by June 30, 2023.[33] This evidence suggests that UFB not only successfully attracted new investors but also retained existing ones who believed they would continue to benefit from the advertised rate.

79.     Plaintiff was one such customer who was attracted by UFB's advertised rates. He opened a Preferred Money Market Account at UFB in April 2023, expecting, as advertised at the time, to earn the highest yield offered by UFB on a UFB money market account.

80.     At the time Pliszka opened his account, the advertised APY was 5.02%. The UFB website did not state that there were other "legacy" money market account products paying lower rates.

81.     Based on the advertised APY and on UFB's representation that it only had one high-yield money market account, Pliszka deposited $80,000 into his Preferred Money Market account on April 11, 2023.

82.     Pliszka continued to earn 5.02% APY on his Preferred Money Market account until August 1, 2023 or thereabouts, when the APY on his account *decreased* to 4.67%.

83.     Pliszka later scrutinized UFB's promotional materials and noted that UFB prominently advertised a "High Yield Money Market" account on its website boasting 5.25% APY, while Pliszka was earning less than that on his account.

---

(https://www.sec.gov/ixviewer/ix.html?doc=/Archives/edgar/data/0001299709/000129970923000198/ax-20230630.htm) (last viewed February 22, 2024).
[33] *Id.*

84.    Pliszka contacted UFB on or about September 26, 2023 via online chat, saying, "I also see you are offering 5.25% why am I only getting 4.5%[?]" Pliszka further expressed his dissatisfaction with UFB during the chat, stating, "Why wouldn't you tell me in a[n] email you lowered my rate, or tell me there is another product making a better rate. I have lost some confidence in your bank now."

85.    In response, the UFB agent informed Pliszka that he needed to "upgrade" his account to receive UFB's advertised rates, even though the UFB agent acknowledged that Pliszka only "recently ha[d] joined the UFB Direct family."

86.    The UFB agent further stated: "I understand your frustration regarding the new product release and interest rate changes. However, we are not notifying customers regarding new product releases or when rates increase or decrease. As such, we do not notify our customers. We leave the responsibility of managing the account(s) up to the customers, and their reviewing of rate fluctuations." This statement was nonresponsive to Plaintiff's concerns, because reviewing UFB's website leaves customers with the impression that there is only one money market account product, does not disclose that there are "legacy" accounts, and therefore does not allow customers to compare rates across UFB's actual product line. Moreover, the issue is not only that UFB failed to inform about a "new product release," but that it concealed that all existing customers were being relegated to "legacy" status at lower rates.

87.    To deter the Plaintiff from promptly withdrawing his funds and closing his account, UFB "upgraded" his account to its then-current offering. Consequently, the Plaintiff's account was upgraded to the "High Yield Money Market" account, thereby initiating earnings at the rate of 5.25% APY.

88.    In connection with upgrading the account, the UFB agent informed Pliszka that once upgraded, "[y]our account remains the same other than your account name and the interest rate."

89.    Pliszka was not provided any prior notification by UFB regarding the reclassification of his account or otherwise told that it was no longer considered the highest-yielding money market account at UFB. Additionally, UFB had failed to make him aware that the APY on his money market account had been capped.

90.    The applicable Account Agreements in effect when Plaintiff opened his Preferred Money Market Account and when he upgraded to his High Yield Money Market Account both state that "The interest rate and corresponding APY for savings and money market accounts are variable and are set at our discretion."

91.    Notably, subsequent to the Plaintiff's discussion with UFB, the "High Yield Money Market" account has also undergone conversion into a "legacy" account. However, it continued to pay 5.25% APY in November 2023 and December 2023, and 5.24% APY in January 2024 and February 2024.

92.    Due to UFB's deceptive practices as alleged herein, Pliszka opted to close his money market account and requested the transfer of all funds out of the account on March 6, 2024.

93.    Plaintiff and the Class members were harmed and damaged in an amount equal to the difference between the interest they were paid on their "legacy" accounts and the interest they would have received had they been paid UFB's advertised rates for its current money market account offerings.

94.    To the extent reliance is a required element of any of Plaintiff's claims, such reliance is presumed for Plaintiff and all Class members because all of UFB's money market accounts are functionally identical except for the interest rate. No rational person would choose to remain in a "legacy" account with a materially lower interest rate absent UFB's deceptive conduct.

95.    UFB account holders who have discovered the Bank's account re-naming scheme have left scathing reviews of the bank on sites such as depositaccounts.com. Of the 218 reviews of UFB on depositaccounts.com, 145 give the bank only 1 star.

96.     For example, an October 2, 2023 customer review of UFB titled "UFB Slimy [*sic*] Bank," reads: "Do not use UFB Direct, unless you like a dis-honest slime-ball banking experience. Several months ago I opened a money market and a savings account each with the FDIC max insured amounts because they had a very good rate. Then 2 months later, after the Fed raised rates again, they lowered both rates by more than half a percent WITHOUT notice. I know that every bank has boilerplate disclosure about being able to change rates at any time without notice, but none of them do! I have accounts at 4 other banks and none of them lowered rates after the Fed raised rates……and they all give me notice when a rate changes (up or down). So I withdrew my money. Then I get a call from them asking why I withdrew my money, I told them and they offered to pay me a new higher rate if I would stay. NO WAY…..they would likely just lower it again without notice in another month or two. To top it off…my money was with them for 3/4 of last month and because I withdrew it they did not pay me any interest at all for last month. I would not deal with these guys at all…..there are other banks or brokerages that are not deceptive and treat their customers much better."

**UFB Slimey Bank**

★ ★ ★ ★ ★  Posted by: FredPeck | Oct 2, 2023

Do not use UFB Direct, unless you like a dis-honest slime-ball banking experience. Several months ago I opened a money market and a savings account each with the FDIC max insured amounts because they had a very good rate. Then 2 months later, after the Fed raised rates again, they lowered both rates by more than half a percent WITHOUT notice. I know that every bank has boilerplate disclosure about being able to change rates at any time without notice, but none of them do! I have accounts at 4 other banks and none of them lowered rates after the Fed raised rates……and they all give me notice when a rate changes (up or down). So I withdrew my money. Then I get a call from them asking why I withdrew my money, I told them and they offered to pay me a new higher rate if I would stay. NO WAY…..they would likely just lower it again without notice in another month or two. To top it off… my money was with them for 3/4 of last month and because I withdrew it they did not pay me any interest at all for last month. I would not deal with these guys at all…..there are other banks or brokerages that are not deceptive and treat their customers much better.

## CLASS ACTION ALLEGATIONS

97.     This action is brought by Plaintiff, individually and on behalf of all others similarly situated, as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3). Plaintiff seeks to represent a class of all persons who have been UFB

high-yield money market accountholders since UFB began converting its money market accounts to "legacy" accounts (the "Class"). Plaintiff also seeks to represent a subclass of all persons in New York who have been UFB money market accountholders sinch UFB began converting its money market accounts to "legacy" accounts (the "New York Subclass").[34]

98.    Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the Class definition.

99.    Excluded from the Class are UFB and any person, firm, trust, corporation, or other entity related to or affiliated with any of UFB's partners, subsidiaries, affiliates or joint ventures.

100.    The members of the Class are so numerous and dispersed that it would be impracticable to join them individually. At all relevant times, there were thousands of high-yield money market accountholders. The precise number of Class members and their identities are unknown to Plaintiff at this time but can be determined through discovery.

101.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

    i.    Whether UFB adjusted (or did not adjust) the interest rate associated with its high-yield money market accounts dishonestly, unfairly, and/or in bad faith;

    ii.    Whether UFB breached the implied covenant of good faith and fair dealing in its contracts with money market account holders;

    iii.    Whether UFB's conduct violates the California Business and Professions Code § 17200 and § 17500;

---

[34] All further references herein to the "Class" shall encompass and equally apply to the New York Subclass.

iv.    Whether UFB's conduct violates Cal. Civ. Code § 1750;

v.    As to the New York Subclass, whether UFB's conduct violates New York General Business Law Section 349;

vi.    Whether UFB's wrongful conduct caused Plaintiff and the Class members damages;

vii.    The measure, and consequently, the amount of damages suffered by Plaintiff and Class members;

viii.    The amount of restitution to which Plaintiff and Class members are entitled;

ix.    Whether Plaintiff and the Class members are entitled to punitive damages;

x.    Whether Plaintiff and Class members are entitled to a reasonable award of attorney fees, interest, and costs of suit.

102.    Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent because they were all UFB money market account holders.

103.    Plaintiff will fairly and adequately protect the interests of members of the Class and have retained counsel competent and experienced in class actions and consumer litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

104.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

105.    UFB has acted on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

106.   Class certification is also appropriate because there is a readily identifiable class on whose behalf this action can be prosecuted. Class members are readily ascertainable from UFB's records. A notice of pendency or resolution of this class action can be provided to Class members by direct mail, email, publication notice, or other similar means.

**FIRST CAUSE OF ACTION**

For Breach of the Implied Covenant of Good Faith and Fair Dealing

On Behalf of the Class

107.   Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

108.   The Account Agreement states: "This Agreement is governed by federal laws and, when applicable, the laws of the State of California."

109.   The Account Agreement is a legal, valid, and binding contract between Class members and UFB.

110.   Under California law, a covenant of good faith and fair dealing is implied by law in every contract. The covenant obligates the parties to a contract not to do anything which injures the right of the other to receive the benefits of the agreement.

111.   Where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing. The exercise of discretionary powers is evaluated under the implied covenant to assure that the promises of the contract are effective and in accordance with the parties' legitimate expectations.

112.   UFB breached the implied covenant inherent in its Account Agreement with Plaintiff and members of the Class by enticing them to sign up for money market accounts at an advertised high-yield variable interest rate. However, within a short period of time, Defendant would substitute its highest yielding money market account with a similarly named account that provided a higher interest rate

exclusively to new customers, leaving its newly designated "legacy" account holders without the promised benefits. Indeed, Defendant only exercised its discretion to lower interest rates for legacy account holders. UFB failed to provide any, let alone formal or effective, notification to its current account holders, even those who had initiated accounts just days before, regarding the impending designation of their accounts as "legacy" accounts. Additionally, UFB failed to communicate to these designated "legacy" account holders that, following the furtive replacement of their accounts, they would no longer enjoy the previously granted highest available interest rates promised by the bank.

113.   Thus, UFB deprived Plaintiff and the Class of the high-yield accounts it promised them, contrary to their legitimate expectations.

114.   Plaintiff and his fellow Class members have performed all, or substantially all, of the obligations imposed on them under the Account Agreement.

115.   As described above, UFB is required to fulfill its obligations under the terms of the Agreement but has failed to do so.

116.   UFB has unfairly interfered with the right of Plaintiff and members of the Class to receive the benefits of the Agreement.

117.   Plaintiff and members of the Class have suffered substantial damages as a result of UFB's breaches of the implied covenant of good faith and fair dealing inherent in the Account Agreement.

**SECOND CAUSE OF ACTION**

For Violations of Cal. Bus. & Prof. Code § 17200

On Behalf of the Class

118.   Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

119.   Plaintiff asserts this cause of action against Defendant for unlawful, unfair and fraudulent business practices; and unfair, deceptive, untrue and

misleading advertising, as defined by California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. (the "UCL").

120.  UFB's conduct described herein violates the UCL, as the acts and practices of Defendant constitute a common and continuing course of conduct by means of "unlawful," "unfair," and "fraudulent" business acts or practices within the meaning of the UCL.

121.  As described above, while engaging in trade or commerce within the State of California during the time period relevant hereto, Defendant:

a.  Unfairly and deceptively created new accounts with similar names, which featured a higher APY than the "legacy" money market account, while failing to pay existing "legacy" account holders the same APY as paid on the replacement money market accounts;

b.  Failed to inform "legacy" account holders that their advertised money market account was not UFB's only online money market account, and that the "legacy" account continued to exist with a much lower interest rate, which is material to customers;

c.  Failed to disclose to its "legacy" money market accountholders that a new, materially identical online money market account product was available;

d.  Failed to disclose that Defendant's "discretion" in setting interest rates really meant that Defendant would only exercise that discretion to lower interest rates;

e.  Failed to correct representations that "legacy" account holders were enrolled in UFB's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online money market account products or UFB's own advertised money market account; and

f. Failed to correct representations that the APY on their money market accounts would vary in accordance with prevailing market conditions, including the federal funds rate and other relevant benchmark rates.

122. UFB's conduct described herein violates the UCL, as the acts and practices of Defendant constitute a common and continuing course of conduct by means of "unlawful" "unfair" and "fraudulent" business acts or practices within the meaning of the UCL.

123. Defendant's conduct is fraudulent. As alleged above, after advertising the money market account as UFB's high-interest money market account offering, UFB created new, but materially identical accounts, with similar names, without informing current customers, thus attempting to conceal from current customers that UFB had changed the nature of its "legacy" money market accounts in order to enrich itself at its customers' expense.

124. Defendant's conduct is unlawful in that it violates, among other things, California Civil Code §§ 1572, 1709 and 1710, as well as California Business & Professions Code § 17500. As alleged herein, after advertising the money market account as UFB's high-interest online account offering, UFB created new, but materially identical accounts, with similar names, without informing current customers, thus attempting to conceal from current customers that UFB had changed the nature of its "legacy" money market accounts in order to enrich itself at its customers' expense.

125. Defendant's conduct is unfair, because its utility, if any, is greatly outweighed by the harm it causes to Plaintiff and members of the Class; and because it is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers; and because it violates established public policy as alleged herein. For example, after advertising the money market account as UFB's high-interest online account offering, UFB created new, but materially identical accounts, with similar names, without informing current customers, thus attempting to conceal from current

customers that UFB had changed the nature of its "legacy" money market accounts in order to enrich itself at its customers' expense.

126.   As a direct and proximate cause of Defendant's violations of the UCL, Plaintiff and members of the Class suffered an injury in fact and have suffered monetary harm. Defendant, on the other hand, has been unjustly enriched. The Court should impose a constructive trust and should require Defendant to make restitution to Plaintiff and the Class and/or disgorge its ill-gotten profits pursuant to Business & Professions Code § 17203.

127.   Defendant's unlawful, unfair, and fraudulent business practices, as described herein, present a continuing threat to Plaintiff and the general public in that Defendant's deceptive conduct is ongoing. Plaintiff further seeks an order enjoining Defendant from engaging in any unlawful or inequitable acts and practices as alleged herein.

128.   Plaintiff and the Class seek equitable relief because they have no other adequate remedy at law.

### THIRD CAUSE OF ACTION

For Violations of Cal. Bus. & Prof. Code § 17500

On Behalf of the Class

129.   Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

130.   UFB's conduct described herein violates California's False Advertising Law (the "FAL"), codified at California Business and Professions Code section 17200, *et seq*.

131.   The FAL provides in pertinent part, that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof . . . to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate

or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning . . . those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell . . . those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. . . ."

132.   UFB engaged in untrue and/or misleading advertising practices in violation of the FAL in the following respects, among others: UFB's representations implied that the APY on the accounts opened by Plaintiff and the Class member would be the highest APY offered by UFB on any money market account, which was false; and UFB's representations further implied that the APY would vary in a nonarbitrary manner, both up and down, and that the APY would vary in accord with the federal funds rate, which was false.

133.   The harm to Plaintiff and Class members arising from UFB's untrue and/or misleading advertising practices relating to the interest rates and APYs available in connection with its money market accounts outweighs the utility, if any, of those practices.

134.   Plaintiff and Class members relied on UFB's misrepresentations and omissions as alleged herein. All of UFB's money market accounts are functionally identical except for the interest rate. No rational person would choose to remain in a "legacy" account with a materially lower interest rate absent UFB's deceptive conduct.

135.   UFB's untrue and/or misleading advertising practices relating to the interest rates and APYs available in connection with its money market accounts as alleged herein are immoral, unethical, oppressive, and/or substantially injurious to Plaintiff and his fellow Class members.

136.   As a result of UFB's violations of the FAL, Plaintiff and Class members have each lost substantial sums and will continue to suffer actual harm, and are therefore entitled to bring a claim for equitable relief in the form of disgorgement of UFB's profits and unjust enrichment.

137.   Public injunctive relief under the FAL is also necessary because UFB continues to deceive current and prospective accountholders.

**FOURTH CAUSE OF ACTION**

For Violations of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq.

On Behalf of the Class

138.   Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

139.   The conduct of Defendant alleged above constitutes an unfair method of competition and unfair or deceptive act or practice in violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA").

140.   Defendant's money market accounts are services as defined by Cal. Civ. Code § 1761(b). The Account Agreement further refers to UFB's "services," including "Electronic Funds Transfer Services" and "Online Banking and Bill Payment Services."

141.   Defendant is a person under Cal. Civ. Code § 1761(c).

142.   Plaintiff and Class members are consumers under Cal. Civ. Code § 1761(d).

143.   Plaintiff's use of his money market accounts were transactions under Cal. Civ. Code § 1761(e).

144. As described above, while engaging in trade or commerce within the State of California during the time period relevant hereto, Defendant:

    a. Unfairly and deceptively created new accounts with similar names, which featured a higher APY than the "legacy" money market account, while failing to pay existing "legacy" account holders the same APY as paid on the replacement money market accounts;

    b. Failed to inform "legacy" account holders that their advertised money market account was not UFB's only online money market account, and that the "legacy" account continued to exist with a much lower interest rate, which is material to customers;

    c. Failed to disclose to its "legacy" money market accountholders that a new, materially identical online money market account product was available;

    d. Failed to disclose that Defendant's "discretion" in setting interest rates actually meant that Defendant would only exercise that discretion to lower interest rates;

    e. Failed to correct representations that "legacy" account holders were enrolled in UFB's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online money market account products or UFB's own advertised money market account; and

    f. Failed to correct representations that the APY on their money market accounts would vary in accordance with prevailing market conditions, including the federal funds rate and other relevant benchmark rates.

145. Defendant's conduct constitutes unfair methods of competition and unfair or deceptive acts or practices in violation of the CLRA, as follows:

a. Cal. Civ. Code § 1770(a)(5) ("Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . .");

b. Cal. Civ. Code § 1770(a)(7) ("Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.");

c. Cal. Civ. Code § 1770(a)(9) ("Advertising goods or services with intent not to sell them as advertised.");

d. Cal. Civ. Code § 1770(a)(14) ("Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.");

e. Cal. Civ. Code § 1770(a)(16) ("Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.").

146.   The misrepresentations and omissions set forth above are of material facts that a reasonable person would have considered important in deciding whether or not to engage Defendant's services. Plaintiff and Class members justifiably and uniformly acted or relied upon Defendant's misrepresentations and omissions to their detriment. All of UFB's money market accounts are functionally identical except for the interest rate. No rational person would choose to remain in a "legacy" account with a materially lower interest rate absent UFB's deceptive conduct.

147.   Plaintiff and the other members of the Class have been, and/or continue to be, injured as a direct and proximate result of Defendant's violations of the CLRA.

148.   Plaintiff is entitled to pursue a claim against Defendant on behalf of himself and the Class to enjoin Defendant from continuing its unfair or deceptive acts or practices under Cal. Civ. Code § 1780(a) and § 1781, as well as to pursue costs and attorneys' fees under § 1780(e).

149.    Pursuant to Cal. Civ. Code § 1782, Plaintiff is serving on Defendant a CLRA notice letter. If Defendant fails to rectify these issues within the time period specified therein, Plaintiff will amend this Complaint, as permitted thereby, to assert claims for additional relief, including damages and punitive damages pursuant to Cal. Civ. Code § 3294.

**FIFTH CAUSE OF ACTION**

For Violations of N.Y. G.B.L. § 349

On behalf of the New York Subclass

150.    Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

151.    New York Gen. Bus. Law § 349(a) ("New York G.B.L. § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

152.    As described above, while engaging in consumer-oriented trade or commerce within the State of New York during the time period relevant hereto, Defendant:

    a. Unfairly and deceptively created new accounts with similar names, which featured a higher APY than the "legacy" money market account, while failing to pay existing "legacy" account holders the same APY as paid on the replacement money market accounts;

    b. Failed to inform "legacy" account holders that their advertised money market account was not UFB's only online money market account, and that the "legacy" account continued to exist with a much lower interest rate, which is material to customers;

    c. Failed to disclose to its "legacy" money market accountholders that a new, materially identical online money market account product was available;

d.  Failed to disclose that Defendant's "discretion" in setting interest rates actually meant that Defendant would only exercise that discretion to lower interest rates;

e.  Failed to correct representations that "legacy" account holders were enrolled in UFB's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online money market account products or UFB's own advertised money market account; and

f.  Failed to correct representations that the APY on their money market accounts would vary in accordance with prevailing market conditions, including the federal funds rate and other relevant benchmark rates.

153.  The foregoing deceptive acts and practices were directed at consumers.

154.  As a result of Defendant's false, misleading, and deceptive misrepresentations and omissions, Plaintiff and the members of the New York Subclass have suffered and continue to suffer economic injury.

155.  Plaintiff and members of the New York Subclass suffered an ascertainable loss caused by UFB's misrepresentations.

156.  On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three-times actual damages, and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, requests that the Court award the following relief:

A.  Certify this action as a class action, appoint Plaintiff as the Class representative, and designate the undersigned as Class counsel;

B.  Declare Defendant's conduct unlawful;

C.    Enjoin Defendant from the unlawful conduct alleged herein, including by ordering UFB to immediately provide variable, high-yield interest rates to all UFB "legacy" money market account holders commensurate with the rates applied to UFB's concurrently advertised money market account product;

D.    Award Plaintiff and the Class (and New York Subclass) damages under common law and/or by statute, including treble and/or punitive damages;

E.    Award Plaintiff and the Class (and New York Subclass) restitution and/or disgorgement;

F.    Award Plaintiff attorneys' fees, costs, and pre-judgment and post-judgment interest; and

G.    Grant such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all issues so triable.

DATED:  March 6, 2024

Respectfully submitted,

By: */s/ Philip M. Black*
Philip M. Black

WOLF POPPER LLP
Philip M. Black (SBN 308619)
pblack@wolfpopper.com
Chet B. Waldman (*pro hac vice*
forthcoming)
cwaldman@wolfpopper.com
845 Third Avenue
New York, NY 10022
Telephone:  212.759.4600

*Counsel for Plaintiff and the Proposed Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28